1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3        UNITED STATES OF AMERICA,        )
                                          )
4                 Plaintiff,              )
                                          )
5                 vs.                     ) Case No.
                                          ) 3:21-cr-30009-DWD-1
6        DERRICK D. INGRAM,               )
                                          )
7                 Defendant.              )

8
                                    SENTENCING
9

10

    BE IT REMEMBERED AND CERTIFIED that heretofore on the 8th day
11    of December, 2021, HONORABLE DAVID W. DUGAN, United States
      District Judge, presiding, the following proceedings were
12    recorded by mechanical stenography; transcript produced by
                                   computer.
13

14   APPEARANCES:

15   FOR PLAINTIFF:          UNITED STATES ATTORNEY'S OFFICE
                             9 Executive Drive
16                           Fairview Heights, IL  62208
                             By Ms. Alexandria M. Burns
17

18   FOR DEFENDANT:          OFFICE OF THE FEDERAL PUBLIC DEFENDER
                             650 Missouri Avenue, Suite G10A
19                           PO Box 159
                             East St. Louis, IL  62201
20                           By Mr. David L. Brengle

21

22
                         Karen E. Waugh, CSR, RPR, CRR
23                          IL CSR #084-003688
                             750 Missouri Avenue
24                        East St. Louis, IL  62201
                               618-482-9176
25                     karen_waugh@ilsd.uscourts.gov

```
 1                   (Court convened at 10:13 a.m.)

 2              COURTROOM DEPUTY:  United States of America v.

 3    Derrick Ingram, 21-cr-30009, is called for a sentencing.  Will

 4    the parties please identify themselves for the record?

 5              MS. BURNS:  Ali Burns on behalf of the United States.

 6    Good morning.

 7              THE COURT:  Good morning.

 8              MR. BRENGLE:  Your Honor, David Brengle for

 9    Mr. Ingram.

10              THE COURT:  Good morning, Mr. Brengle.  Good morning,

11    Mr. Ingram.

12              THE DEFENDANT:  Good morning.

13              THE COURT:  Mr. Ingram, I'm going to have you sit up

14    to the microphone.  You can pull your mask down when you

15    speak, okay, and I'm going to have you sworn in.

16       (Defendant sworn.)

17              THE COURT:  All right.  The matter we have this

18    morning is for sentencing.  Is there any reason we can't

19    proceed on sentencing today?

20              MS. BURNS:  No, Your Honor.

21              MR. BRENGLE:  No, Your Honor.

22              THE COURT:  No victims, I presume?

23              MS. BURNS:  That's correct, Your Honor.

24              THE COURT:  All right.  Looking at the file in this

25    matter, I note that Mr. Ingram was -- pled guilty to
```

1    indictment charge on felon in possession, which is a violation

2    of 18 USC 922(g).  In that process I reviewed numerous

3    documents.  I didn't have any letters.  Did I miss any letters

4    from anyone?

5            MR. BRENGLE:  No, Your Honor.

6            THE COURT:  All right.  I have received and reviewed

7    the following:  The United States' sentencing memorandum,

8    which is Document 33; the defendant's memorandum and

9    objections, Document 35; defendant's objection to PSR,

10   presentence investigation report, Document 30; United States'

11   sentencing memo I think in response is Document 31; and then a

12   supplemental is 34.  Was there anything else that I missed?

13           MS. BURNS:  No, Your Honor.

14           MR. BRENGLE:  I believe that's all.

15           THE COURT:  Okay.  Good.  Okay.  So we have a

16   presentence investigation report.  We'll talk about that.  We

17   know that that was -- there's an addendum to that, but let's

18   talk about the presentence investigation report, Document 29;

19   consists of 30 pages.  Mr. Brengle, have you had an

20   opportunity to review this with your client?

21           MR. BRENGLE:  Yes, Your Honor.

22           THE COURT:  Mr. Ingram, have you had a chance to

23   review the presentence investigation report?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Okay.  You're able -- As I recall, you're

```
 1    able to read and write and understand the English language
 2    fine?
 3              THE DEFENDANT:  Yes, Your Honor.
 4              THE COURT:  Okay.  Is everything in the PSR, the
 5    presentence investigation report, true and accurate?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  Have you had a chance to review the
 8    conditions of release, supervised release?  Have you had a
 9    chance to review those?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  I want to remind you, I think you -- last
12    time you were here I told you that if at any point in time
13    that you have any question of your counsel, let me know and
14    I'll give you a chance to speak to him, okay?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  I think I know the answer to this
17    question.  Are there any objections to the PSR you want to
18    address?
19              MS. BURNS:  I have none.
20              THE COURT:  I know you have none.
21              MR. BRENGLE:  None other than the objection that was
22    filed, Your Honor.
23              THE COURT:  All right.  That are expressed in the
24    memoranda?
25              MR. BRENGLE:  Yes, Your Honor.
```

```
 1              THE COURT:  Okay.  Well, it's probably a good time to
 2   take that up.  Let's do this.  Let's hold off on that.  I'm
 3   not going to rule on that yet, obviously.  I'm going to allow
 4   you to reserve your arguments on that till a little further
 5   into this colloquy, all right?
 6              MR. BRENGLE:  Thank you, Your Honor.
 7              THE COURT:  All right.  Apart from that, apart from
 8   the PSR, the objections that you're going to make,
 9   Mr. Brengle, are there any objections to the conditions of
10   supervision that are outlined in the PSR?
11              MR. BRENGLE:  No, Your Honor.
12              THE COURT:  Any from the Government?
13              MS. BURNS:  No, Your Honor.
14              THE COURT:  Okay.  Is there going to be a motion for
15   acceptance of responsibility?
16              MS. BURNS:  Yes, Your Honor.
17              THE COURT:  No objection to that, I assume,
18   Mr. Brengle?
19              MR. BRENGLE:  No, Your Honor.
20              THE COURT:  Okay.  We'll grant that.  So I want to
21   review with you, Mr. Ingram, the sentencing options --
22   statutory provision sentencing options that are available.
23   The offense level -- and we'll get into the calculation in a
24   moment about that -- I think it was -- arrived at a 17 -- and
25   again, I'll calculate that with you -- and then a criminal
```

1  history of 5 based upon 10 points.  Statutorily that would

2  mean that you would have exposure or possible sentence of up

3  to 10 years, not more than 10 years; supervised release of not

4  more than 3 years; probation, you're technically ineligible,

5  but it could be 1 to 5 years; a fine of $250,000; restitution

6  not applicable; and special assessment of $100.  I think the

7  forfeiture has been resolved, true?

8           MS. BURNS:  Yes, Your Honor.  I -- My understanding

9  is I believe Mr. Ingram signed a stipulation and consent to

10  forfeit the firearm.

11           MR. BRENGLE:  I honestly don't recall, but we're not

12  contesting the forfeiture.

13           MS. BURNS:  I believe it was filed at the plea, if

14  I'm not mistaken.

15           THE COURT:  I saw an order, but we'll take a look at

16  that and we'll get that done.  But there's no objection on

17  that from --

18           MR. BRENGLE:  No.  No, Your Honor.

19           THE COURT:  Okay.  Thank you.  Very good.  So those

20  are the possible exposures that you have.  I want to go over

21  the advisory guideline range as well.  Again, the base offense

22  level based upon a violation of 18 USC 922(g) would be a 14,

23  is the way I view that.  There's an issue as to the specific

24  offense characteristics, and that's under the United States

25  sentencing guidelines, Section 2K2.1(b)(6)(B).  Maybe for ease

1    of reference when we're discussing this, we can simply refer

2    to it as 2K2.1 -- might be easier for everybody since there's

3    so many subsections -- that particular subsection providing

4    that where a weapon is used -- or a defendant uses or

5    possesses any firearm or ammunition in connection with another

6    felony offense, there's an increase by four levels.  So I

7    understand there's an objection to that particular point,

8    Mr. Brengle, and I think now is a good time to be heard on

9    that.

10          MR. BRENGLE:  Thank you, Your Honor.  Should I

11   approach the podium or stand?

12          THE COURT:  Whatever you feel most comfortable with.

13          MR. BRENGLE:  Okay.  Thank you, Your Honor.

14          Your Honor, thank you for the opportunity to address

15   the Court on the objection.  I'm not going to add very much.

16   I would just say that most of -- some of the cases the

17   Government cites in their response to my objection, I cite in

18   mine.  You know, there's some overlap.  I think, you know, as

19   a defense practitioner, we have to be sensitive to -- when we

20   deal with sort of, like, traffic stops with drugs and guns to

21   not just say, well, there are guns in the car, there's drugs

22   in the car and guns, so they must be related, we -- to just

23   give that away to the Government, and in a situation like

24   this, which, you know, in one of the other documents I think

25   it's sort of, like, not uncommon in this district, from my

1    perspective, it's important to look at is the gun really in

2    connection with another felony, and that's simply what we're

3    asking the Court to do, is take a close look at is there

4    evidence to suggest the gun is related to these drugs, and

5    while it is -- I will admit in many cases guns and drugs are

6    related, it doesn't mean that we should just assume they are

7    in the case in front of us, and, you know, we're just

8    submitting, as outlined in our objection, that the evidence

9    that is here to suggest I think that the felony that's pointed

10   to is possession of controlled substances, so what evidence is

11   there that this gun is related to possessing?  I don't think

12   there's any evidence that Mr. Ingram used this gun to procure

13   these substances or necessarily that he used the gun to defend

14   the substances.  While maybe those are possible explanations

15   for something in connection, I don't think there's evidence

16   here that that occurred.

17          Sometimes this special offense characteristics

18   application is more obvious, like where there's a ledger in

19   the car and there's, you know, more baggies and a scale and,

20   you know, a note to someone, like, I'm going to sell you drugs

21   tomorrow.  You know, there -- these -- this special offense

22   characteristics application exists on a continuum, and we're

23   just respectfully suggesting, Your Honor, that this set of

24   facts here fall short of what should justify the application

25   of these four levels.

1        That will probably conclude my comments unless the

2   Court wanted to hear about something specific, and if not, I

3   think I'm okay.

4        THE COURT:  I never want to cut people off, but I

5   have read your memorandum twice over with interest, so it's an

6   interesting argument.  I think I've captured it.

7        MR. BRENGLE:  Thank you, Your Honor.

8        THE COURT:  Anything from the Government?

9        MS. BURNS:  Your Honor, similarly, I don't have, you

10  know, any new case to provide to the Court other than what was

11  cited in my response.  However, I would just like to highlight

12  that I agree with the defense that this doesn't always apply

13  when guns and drugs are at play.  I have a case pending right

14  now where the same discussion is occurring, and I tend to

15  agree that it probably doesn't apply because I think the facts

16  are different.  I think in this case, in looking at the facts,

17  first how probation applied it, which is just based on the

18  possession of drugs, I think even that alone does fit, and I

19  know I cited some case law that I don't believe is from the

20  Seventh Circuit but is instructive.  I don't think there is a

21  Seventh Circuit case that, you know, hits on this, otherwise I

22  think we both would have cited to it one way or the other, but

23  there's other circuits that have addressed this, that, sure,

24  simple possession of drugs such as a search warrant in a house

25  where, you know, you find drugs in one room and, you know, saw

1    somebody with a gun at some other time, I agree that may not

2    apply in those circumstances.  I don't think that's what we

3    have here, I think the difference being that Mr. Ingram made a

4    conscious decision to arm himself with a gun and have

5    possession of methamphetamine and cocaine in this case and

6    venture into the public, and I think the case law hits on

7    similar situations like that, how that is different, and it

8    would apply in those circumstances.  So I do think that's

9    different.

10          I would also, you know, just note for the Court that

11   the Court could find that it applies on that basis, but the

12   Court can also find that it applies based on the theory of

13   possession with intent to distribute drugs, and I think the

14   facts also support that here.  So Mr. Ingram's history is

15   something that can be taken into account.  He has numerous

16   convictions for previously possession with intent as well as

17   actual drug dealing for cocaine.

18          THE COURT:  Any evidence outside of history?

19          MS. BURNS:  His statement.  So his statement that

20   he's been dealing drugs all his life, and I do think that is

21   something that the Court can consider.  And, you know,

22   lastly -- and I know that the defense hit on this in their

23   objection and I briefly just cited to it, and I think it'll

24   probably come up in sentencing -- but regarding Mr. Ingram's

25   statements about the need for protection, for his purpose of

1    having a gun is the need for protection relating to a prior

2    case, and I would just note to the Court that I think both can

3    coexist, right?  Like, I think a drug dealer can be targeted

4    for being a drug dealer and for being involved in violent

5    crime.  I think those can coexist together, so I think if the

6    Court does find that this applies, it's not saying that he

7    didn't also have that concern for his safety as well related

8    to another case.

9         So unless the Court has specific questions for me, I

10    would, you know, rely on my submission and my response.

11         THE COURT:  No, I appreciate that.  Thank you.  I

12    understand it.

13         MS. BURNS:  Thank you.

14         THE COURT:  Mr. Brengle, I -- it occurred to me this

15    concurrent existence of connection -- that is, that there is a

16    connection, as Counsel indicated, that is between the drugs

17    and the gun and also possibly between the guns and the threats

18    of individuals who want to retaliate because of testimony --

19    can those coexist and still satisfy the guideline comment that

20    we reviewed a moment ago?

21         MR. BRENGLE:  Sure, Your Honor.  I think so.  I mean,

22    I don't have -- I think so, yeah, right.  I agree with what

23    Ms. Burns said in that respect, that, sure, someone can be

24    targeted for being involved with drug dealing and then also

25    for offering testimony or --

1            THE COURT:  But would -- obviously that's the case,

2      but would that satisfy 2K2.1 that we reviewed a moment ago?

3            MR. BRENGLE:  Well, I -- so a couple things.  So I

4      think with the application of this special offense

5      characteristic, you know, I think the guidelines requires that

6      it -- that if you're going to say a gun is in connection with

7      another crime, you have to identify the other crime it's in

8      connection to, and --

9            THE COURT:  You don't have to charge him with it.

10     You simply have to identify it.

11           MR. BRENGLE:  Yeah, I -- exactly, yes.  I agree

12     100 percent, and the U.S. Probation has identified in

13     connection with possession of a controlled substance.  That's

14     the -- That's what we -- As I see it, on the application of

15     this offense characteristic, we have to look at does evidence

16     support the notion that this gun was possessed in connection

17     with possessing drugs.  That's the inquiry.  Now, to see if

18     this gets applied, is it possible that the gun was possessed

19     for other reasons?  100 percent, yeah, you know, but, you

20     know, in -- also in fashioning -- I'm not really being

21     critical of the Government in -- really, but in fashioning my

22     objection, you know, I objected to I think primarily what

23     probation wrote, which is that the gun -- there's no -- from

24     our position, there's no -- not enough evidence that the gun

25     is possessed in connection with possession of drugs.

1              I don't think that my objection dealt as much with is

2    the gun in connection with drug dealing for a couple reasons.

3    Number one, that's not what probation put in the PSR, but

4    number two, I think the case on that is to the extent that one

5    is stronger than the other, I think the drug dealing is much

6    weaker, and one of the reasons I say that, Your Honor, is just

7    the number or the amount of drugs that was involved.  It was

8    clearly user amounts.  There were -- I don't believe there

9    were, like, a bunch of, like, containers found, or if there

10   were, there weren't very many.  There's -- I don't believe

11   there was a scale found.  So in terms of being in connection

12   with drug dealing, I think it's a tough case to make, really

13   tough, tougher than the in possession.  I think that's why

14   probation -- I mean, they're good at what they do -- they

15   picked possession and not possession with intent or some

16   distribution count, okay?

17             So I think the Court is allowed to, like, consider

18   all types of stuff under the 3553(a) factors, and so is it

19   possible that Mr. Ingram's -- has a legitimate fear for his

20   life and that also he did other illegal things with a gun?

21   Sure, yeah, but in looking at whether this enhancement

22   applies, I think the Court has to look to what evidence is

23   there that suggests the gun was possessed in connection with

24   drug possession, because that's what the offense

25   characteristic is, you know, and that's what probation cites.

1          So I'm not sure if that answer the Court's questions.

2     I hope it did.

3          THE COURT:  I was trying to just broach that

4     particular subject that was raised by the Government, and that

5     is, they can coexist, they're not mutually exclusive, so --

6     and I was really referring to your memorandum where you

7     referred that there was an alternate reason that your client

8     was in possession of a firearm, and that's what I was trying

9     to address, is those two things can coexist, be multiple

10    reasons, and if he had the gun -- 90 percent of the reason he

11    had the gun was to protect him against those who might

12    retaliate for his testimony, that doesn't obviate the other

13    10 percent where the gun was used -- or not used, but

14    possessed for the reason that he wanted to protect his stash,

15    his possession, drugs.

16          MR. BRENGLE:  I mean, yeah.

17          THE COURT:  So I wanted to at least broach it that

18    way, and it took a little longer than I anticipated, but I

19    don't mind.  But I guess my concern, though, is looking at his

20    history, his own statement to the police that shows up in the

21    report and the PSR that he had been dealing drugs his whole

22    life and that he's in possession of drugs in a bag, that he

23    abandons the drugs and runs with the gun -- these things are

24    not in dispute, obviously; they're part of the stipulation, as

25    I recall -- those things suggest to me that this falls within

```
1   that category of those cases where a person who has drugs on
2   them and has a history of drug dealing and distribution,
3   regardless of whether he's charged with it, but he has that
4   history, that he ventures out into the public, I think as the
5   cases used that phrase, with that weapon in conjunction with
6   the drugs, I think there's a reasonable basis, and
7   preponderance of the evidence would suggest that that falls
8   well within that specific offense characteristics under
9   2K2.1(b)(6)(B), the way I view it.  I don't think it's -- You
10  know, they don't have a home run, but I think they cross the
11  line.  I think they have -- I say they, the Government -- has
12  enough to justify that.
13          You wanted to say something, though?  Go ahead.
14          MR. BRENGLE:  No, Your Honor.  Other than that, your
15  view is the view of the matters, so --
16          THE COURT:  I appreciate that.
17          MR. BRENGLE:  I think I'm done with my comments if
18  the Court is satisfied.
19          THE COURT:  Okay.  I am.  Thank you, Mr. Brengle.
20          So that specific offense characteristic, my finding
21  would enhance that by four.  There's also a plus two on
22  obstruction for fleeing.  Is there any objection to that,
23  Mr. Brengle?
24          MR. BRENGLE:  No, Your Honor.
25          THE COURT:  So that would be added as well, and then
```

1    there's going to be a total of three, but we'll break it down,

2    of reductions.  One's for acceptance of responsibility, the

3    other one's acceptance of responsibility for assistance, and

4    the motion's been made, so we'll grant that, so those three.

5    So that would leave this gentleman with offense level

6    calculation of 17.

7           Going on to the criminal history, definitely

8    underrepresented by his history, but appropriately so at this

9    level, that he only has 10 points.  His history calculated for

10   this is not reflected in this number, I think we can all

11   agree, based on these -- even these juvenile matters, which is

12   appropriately disregarded.  So that brings him to a

13   category 5.  Looking at the range, imprisonment range on

14   Count 1, the only count, is 46 to 57.

15          So those are my calculations.  Any objection?  Any

16   legal objection to those calculations?

17          MS. BURNS:  No, Your Honor.

18          MR. BRENGLE:  Not other than the objection we've

19   asserted, Your Honor, which you've already ruled on.

20          THE COURT:  Yeah, that's definitely reserved, sir, no

21   doubt.  Probation is not applicable.  Supervised release is 1

22   to 3 years, fine range of 10,000 to 95,000.  Restitution's not

23   applicable.  Special assessment of $1 00 would be appropriate.

24   We covered the forfeiture issue already.  There's no plea

25   agreement, so these are my calculations, obviously, and

1    probation's.  Other than the objection, Mr. Brengle, that we

2    covered a moment ago regarding the specific characteristic, do

3    you have any other objections with respect to the revisions of

4    the advisory or the guidelines that I've outlined for you?

5         MR. BRENGLE:  No.

6         THE COURT:  So, Mr. Ingram, to kind of boil that down

7    for you is that the guidelines, the way I calculate them based

8    upon the numbers that I provided you earlier, that places you

9    in that range of -- guideline range of 46 to 57 months'

10   imprisonment.  However, as I mentioned to you during the plea,

11   that I'm required to take into account a variety of federal

12   laws and guidelines to arrive at an appropriate sentence

13   within or outside the guideline, but I -- these factors I went

14   over with you -- and I want to review those with you as

15   well -- I am required to consider relevant factors that are

16   set forth in the statute or guideline of 3553(a), under 18 USC

17   3553(a), and I want to ensure -- required to ensure that

18   whatever sentence I impose is not greater or more severe than

19   necessary to fulfill the purposes of sentencing.  Part of

20   those purposes include to reflect the seriousness of the

21   crime.  Obviously this is something that I hope is impressed

22   upon you, how serious this offense is.  The circumstances

23   surrounding the offense are exceedingly serious.  One thing

24   that caught my attention -- I usually do this later on, but I

25   want to bring it up now and I'll probably bring it up again --

1  is not just fleeing with a gun, but according to the

2  information I have and the PSR reflects is that even after

3  the -- you were tased, you were still attempting at some level

4  trying to get to the gun even though there's a law enforcement

5  officer standing over you.  This is a huge concern.  This is

6  how people get killed and this is how families are destroyed,

7  either you or the law enforcement officer.  That impressed me

8  deeply.  With that I need to and I will take into account when

9  it comes to the seriousness of the offense, that aspect of it

10 is very important.

11         I also look at need to promote respect for the law,

12 which I think in your case is a difficult proposition, and

13 certainly to provide punishment for the offense.  Obviously

14 it's to deter criminal conduct, not just yours, but others who

15 might be similarly situated or like-minded who want to commit

16 similar crimes.  I will -- I look at the nature and

17 circumstances of the offense, and we'll do that.  Section 922

18 is a felon in possession.  It's an exceedingly serious crime.

19 I have to find my notes here from last night.  The offense

20 that's even included in the stipulation of facts suggests that

21 when you were stopped, you ran from the scene, took the gun

22 with you, left the drugs behind.  You obviously pled guilty,

23 so you stipulate to the fact that you knew you were a felon

24 and were not entitled to possession.  I also looked at the --

25 your history and characteristics, your age being 48.  You do

 1    have a GED, I understand; is that true?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  Okay.  You have three children.  Are any

 4    of those minors?

 5              THE DEFENDANT:  I got my youngest son, 12.

 6              THE COURT:  Twelve?  I looked at your employment

 7    history that was provided by the -- in the PSR, and it looks

 8    like to me you had minimal employment history.  Is that

 9    accurate?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  I also noted that you had a somewhat

12    difficult childhood and you were impoverished somewhat, as so

13    many are.  You had some addiction issues, I think the word --

14    phrase used was chronic cocaine and alcohol problems, which I

15    think maybe would lend itself a little bit to why you're here

16    today.  Would that be true?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  I looked as well at the probation -- your

19    history of probation supervision, and you were on parole

20    several times, and I think, if I remember correctly, there may

21    have been three times that there had been parole.  On two of

22    those you had been returned to custody.  Admittedly, those

23    were in the early 1990s.

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  And then on the third one you were

1    released from parole, but that's largely because you had been

2    charged with another crime, and I think they just gave up at

3    that point, the way I see it.  So those are the factors I

4    looked at when it comes to your history.  There's many others

5    contained in the PSR, but those are the ones that are most

6    prominent.

7              It's usually at this point that I stop and I give the

8    opportunity for the Government to argue regarding factors in

9    aggravation under 3553(a).

10             MS. BURNS:  Thank you, Your Honor.

11             Similar to the PSR objection, I submitted a

12   sentencing memorandum.  I'm not going to cover all of those

13   things again.  I know the Court has reviewed that, but just a

14   few things that I did want to highlight, partially in response

15   to the defense's response memorandum that was submitted.  The

16   Government is asking for an above guideline sentence.  There's

17   no way to, you know, underplay that.  We're asking for

18   7 years, 84 months, which the high end guideline is 57 months,

19   and I think Mr. Ingram is the right person to receive that

20   sentence, so I want to kind of hit a few of those things that

21   were taken into account to suggest that sentence to the Court

22   of why that's appropriate.

23             So the guidelines do account for a lot of the

24   behavior in this case, but it doesn't account for a lot of

25   behavior as well, so the first thing I would like to talk

about is the -- Mr. Ingram's admission that the firearm that
he was found with and has now pled guilty to in this case, he
admits that he was armed with that firearm two weeks prior
when he was shot at in a car, so again, I think this just
shows this is beyond the scope of just one time the police
arrested my friend and I happened to have a hunting rifle in
my car or in my house.  In these felon in possession cases, I
think in all these cases we often talk about it, and sometimes
they fit that, sometimes they don't.  There's a wide range of
what we see in felon in possession.  Unlike state court, where
you might see a shooting charged or a robbery charged or a
felon in possession, in federal court, in the cases we have,
you can have a felon in possession that has to do with just
simply a gun being found during a search warrant all the way
to a gun being used.  We see that range of behavior accounted
for for that charge, and in this case, while I am no -- by no
means and have no evidence to present to the Court that the
defendant was shooting this gun, I do think that speaks to him
having it on the day he was caught with drugs and then
admitting to previously having it two weeks prior when he was
in fact shot at.  I don't have a police report, I don't know
that that was reported to the police in that case, so I don't
know what else happened in that shooting.

        As I noted in my sentencing memorandum, Mr. Ingram
has 12 felonies that he went to prison for that were not

1   accounted for in his criminal history.  You know, frankly, his

2   criminal history is one of the lengthiest I've ever seen and

3   his time out of custody is so little for being 48 years old.

4   I think the longest he's ever been not under supervision is

5   under two years over a 25-year period.  I mean, that is

6   significant, and we're not talking someone who received a

7   30-year sentence so then he's been under supervision or in

8   custody.  He has nearly done a life sentence in the

9   installment plan, and I think that's significant.  I think in

10  looking at the 3553(a) factors and looking at his history and

11  characteristics and his ability or the need to be deterred,

12  his respect for the law, I mean, his behavior speaks for

13  itself.

14          He has -- And then specifically, which I did talk a

15  lot about in my sentencing memorandum, is his flight from

16  police, and I know the Court has noted this already, but I do

17  think it's so important to highlight that that enhancement,

18  the plus two for the reckless endangerment during flight, that

19  can again apply for a range of behavior.  That can apply for,

20  you know, high-speed chase from police, and I think -- and I

21  would argue it can apply when somebody runs from police armed

22  with a gun, but this is even more than that.  This is an

23  individual who when practically apprehended by police, when he

24  had fallen after trying to hop a fence, he's continuing to

25  reach for the gun after being tased, and the danger there

1    is -- I mean, you can't even account for the amount of danger.
2    Luckily in this case nobody ended up shot, but I think we see
3    it all the time and it's a huge risk, and so I think that that
4    is an aggravator in this case, that behavior alone.

5            And then specifically for the seven years, I think
6    that number, where that number came from, his last sentence
7    for a gun crime, that was in St. Louis City that I actually
8    prosecuted.  He received four years.  He was found wearing a
9    bulletproof vest in broad daylight, passing a gun to another
10   convicted felon, and that gun had an extended magazine and an
11   obliterated serial number, and he received four years for that
12   sentence.  And his sentence previous to that, the most lengthy
13   sentence he's ever received, was nine years and six months,
14   and that was for what was amended down to an attempted
15   kidnapping, but if you look at the facts of that case, it also
16   involved a firearm.  So I think in looking at obviously a
17   kidnapping being extremely serious conduct and simple
18   possession of a gun, which is his last conviction of four
19   years, seven years is right in between those, and I think that
20   number accounts for all of those aggravators, it's
21   appropriate, and, you know, it's while still being reasonable
22   based on the facts of his case and not -- you know, we're not
23   coming in asking for ten years.
24           And lastly, I would just also point to the -- the
25   Court to some of the recent statistics that have come out from

1    the Sentencing Guidelines Commission about federal gun crimes,

2    specifically felon in possessions, and I think the most recent

3    statistics show that the highest rate of recidivism is for

4    individuals convicted of felon in possession federally, and

5    Mr. Ingram's history, while they're not federal convictions, I

6    think speaks to that.  His recidivism rate is astronomical.  I

7    think they said that the normal recidivism rate generally for

8    crimes is 45 percent and for felon in possession type offenses

9    it's 69 percent, and it's typically a repeat crime of either

10   gun possession or assault or some crime of violence, and his

11   history speaks to that.  That pattern is already playing out.

12          So in looking at all of that, while I understand that

13   we're asking for an above guideline sentence, it is a

14   variance, we believe that a seven-year sentence is sufficient

15   but not greater than necessary in this case to meet all of the

16   needs of the 3553(a) factors.

17          THE COURT:  All right.  Thank you, Counsel.

18          MS. BURNS:  Thank you.

19          THE COURT:  Before I -- Before you step away, we

20   spoke mostly of the sentence.  I wanted to give you the

21   opportunity if you wished to address the conditions of

22   supervised release -- I think one to three years is what I

23   talked about -- or any other aspect of the punishment, and

24   then I'll give Mr. Brengle the same chance.

25          MS. BURNS:  Sure.  Your Honor, we -- I think in

1    Mr. Ingram's case, three years is appropriate.  I think that's

2    fairly common in felon in possession charges.  I don't have

3    any comments on the specific conditions.  I think what

4    probation has proposed is appropriate, and I would ask for the

5    three years of supervised release.  Thank you.

6            THE COURT:  Thank you.  Mr. Brengle, anything in

7    mitigation?

8            MR. BRENGLE:  Thank you, Your Honor.

9            So, Your Honor, I'm going to make a few confessions

10   here.  I have a bad habit of forgetting the part I'm going to

11   start with.  That's why I'm starting with it.  If Your Honor

12   would consider recommending FCI Greenville for Mr. Ingram --

13           THE COURT:  I'm sorry.  Say again.

14           MR. BRENGLE:  If Your Honor would consider

15   recommending FCI Greenville as a place of designation for

16   Mr. Ingram, we would appreciate that.  The reason we are

17   requesting that is he enjoys support from his family, some of

18   which are here today.  Some -- His daughter could not be here.

19   She recently gave birth by C-section and because of some

20   complications could not make it, but she wanted to attend.  He

21   obviously wants to continue to enjoy that support by being as

22   close to them as possible.

23           THE COURT:  I'll make the recommendation, get past

24   that.

25           MR. BRENGLE:  Thank you, Your Honor.

1          THE COURT:  Certainly.

2          MR. BRENGLE:  And the next topic I'd like to address,

3    Your Honor, is I want to clean up what might be some confusion

4    about why Mr. Ingram felt he needed to have a gun, and so in

5    the Government's response to my objection this was covered,

6    and as I read through it, I was sort of disappointed in

7    myself.  At the tail end, it's at the conclusion is the part

8    I'm referring to, Your Honor.  Be easy to find.  I agree

9    100 percent with the Government's characterization of what

10   took place.  In speaking with Mr. Ingram, he said that, you

11   know, he had testified in this other case, and I wanted to do

12   what I could to verify that, and so I asked AUSA Burns to see

13   if that could be verified, and I used the terminology -- in an

14   amateur move by myself, I used the terminology that Mr. Ingram

15   used, and after I read the response by the Government, it

16   occurred to me that that was not the best way to explore what

17   Mr. Ingram was trying to communicate to me; that oftentimes

18   when -- you know, when we talk about testimony, we have a

19   narrow view of what that means because it's what we do, but

20   people who are not in the courtroom every day may use

21   different words but have different meanings, and in speaking

22   with Mr. Ingram in an attempt to narrow down what he's trying

23   to communicate, he gave a statement to the police.  His

24   statement was recorded and -- by the police and then James

25   Moore pled guilty.

```
 1              Now, everything in the Government's document is true.

 2    It's true that he didn't offer formal testimony, but what I

 3    would say is the way we practice discovery in this district

 4    supports what Mr. Ingram is saying.  The U.S. Attorney of this

 5    district has appeared in front of the CJA panel and said the

 6    reason we cannot give paper discovery to our clients is that

 7    if any -- if a witness' name shows up in the paperwork, they

 8    will be viewed as cooperating with the police, as essentially

 9    offering testimony, and so the result is we can't share

10    paperwork.  When our clients call for discovery, we have to

11    say, well, I have to show it to you, I can't give you the

12    paperwork, because this is a thing, because people get

13    threatened, their families get threatened and they get shot

14    at.  It doesn't always mean that they're a career violent

15    criminal.

16              THE COURT:  That's been the history even when I was

17    on the CJA panel going on 20 years ago.

18              MR. BRENGLE:  Yes, yes, absolutely.  The point I'm

19    trying to make, Your Honor, is that I think this supports what

20    Mr. Ingram is saying as a reason for -- now, does it mean that

21    he should -- that we should, you know, turn a blind eye to the

22    gun possession?  Absolutely not, okay?  That's not what I'm

23    arguing.  But to the extent that the Government's filings make

24    attempt at downplaying the danger Mr. Ingram faced or that

25    maybe he didn't, you know, serve as a factor that led toward
```

1    the plea of James Moore, I would disagree.  I mean, I don't

2    think James Moore pled guilty out of a sense of charity to his

3    community.  It's that he looked at the discovery in his case

4    and decided it was in his interest to do it.  So, you know, I

5    just think that these -- in addition, in the case in

6    St. Louis, when confronted by law enforcement, he was wearing

7    a bulletproof vest, he said, people are trying to kill me.

8    It's not, I live in a neighborhood, it's generally bad.  He

9    felt he personally was being threatened, like, all the time,

10   and he points to this matter, and the Government I do not

11   believe is contesting the idea that Mr. Ingram gave a

12   statement and the statement was recorded in some way, some

13   record was made of his statement.

14         So with respect to the Government's arguments about

15   the under -- and I know -- I guess the Court is sympathetic to

16   the Government's arguments in this matter.  You know, the

17   guidelines have developed their methods for the reasons they

18   develop, and I would respectfully submit to the Court that if

19   the practice is that when criminal history convictions are not

20   counted in the guidelines that we're going to potentially view

21   those as underrepresenting criminal history, that we should be

22   careful to sort of say, like, well, why in this case is -- do

23   we have to do that, but maybe not in some other cases.  I

24   don't really think in every case where there are convictions

25   that are not counted are the court -- is every judge or -- I

1    don't know what will become this Court's practice, but we're

2    just going to say, well, it's underrepresented so now we're

3    going to vary upward.  I think the guidelines counsel that

4    where the courts are going to vary from its guidance, as I

5    outlined in my memorandum, that the size of that variance

6    should be in accordance with the reason.  And so we're not

7    contesting that the guidelines are calculated properly, that

8    there are -- the convictions are there.  We're just asking the

9    Court to view the guidelines as good wisdom, and to the extent

10   that -- and to be careful about creating an unwarranted

11   disparity.

12        In addition, Your Honor, I think it occurred to me in

13   listening to the Government, you know, yeah, okay, so there's

14   a long history of criminal convictions.  Mr. Ingram is also

15   now 49, and Your Honor is going to impose whatever sentence

16   you're going to impose.  Your Honor, as people become older, I

17   would argue -- I think the -- there are also stats, which I

18   wish I had thought to bring to court, but that generally

19   support the notion as people become older, they're less of a

20   threat to the community and I think also probably more

21   amenable to just rehabilitation in general, so I think that's

22   a factor in mitigation, Your Honor.

23        With regard to supervised release, you know, we'd ask

24   the Court to consider something less than the maximum, but

25   we're frankly more concerned with the Court imposing a

1    guideline sentence.  At the appropriate time, Your Honor,

2    Mr. Ingram has prepared a statement that he would like to read

3    to the Court.  I would ask the Court also to just -- and I

4    know the Court has considered the arguments outlined in my

5    response to the Government, but those arguments as well, Your

6    Honor, so thank you.

7           THE COURT:  All right.  Thank you.  Just as a side

8    note, I'm not necessarily sympathetic to the Government's

9    arguments as much as I'm sensitive to what I find in the PSR,

10   but I think I know what you meant.

11          MR. BRENGLE:  Yeah.

12          THE COURT:  So at this time, Mr. Ingram, I'll give

13   you the opportunity to have your statement, your allocution

14   statement, or read it or state it however you want.  You can

15   sit right there and speak into the microphone.

16          THE DEFENDANT:  Yes, Your Honor.

17          I come to the Court humbly and respectfully and

18   sincere with my apology.  I first want to apologize to my

19   family, for they are the ones who have to suffer through this

20   incarceration with me.  For my actions, my daughter has to

21   give birth to my firstborn grandson without the support of her

22   father.  My two sons, 22 and 12, have to spend time without me

23   and figure out certain obstacles that only a father can help

24   facilitate in their life.  I also want to apologize to the

25   rest of my family, who were expecting me to be more

1    responsible and make better rational decisions, also not being

2    there to support my brother in the loss of our mother, which

3    all she ever wanted was for me to be a rock and the strong

4    component of our family.

5           I want to give sincere apologies to the Court for not

6    upholding my responsibility as a law-abiding citizen and make

7    the choices and irrational decisions that could lead me back

8    to prison when my family needs me the most.  I plan on taking

9    this time to reevaluate my life and put the people and things

10   that matter to me first and not to ever make the same

11   bird-brained mistake ever again.  I also want to take this

12   time to learn a skill and trade that will help me be a better

13   provider for my family, in particular auto body or culinary

14   arts, because these are trades that I'm interested in.  I can

15   only promise to my family, the Court and the hands of justice

16   that I will come out a better me and productive citizen and to

17   promise to never put me or my family in this tragic situation

18   again.  I can only ask the Court to have mercy on me and my

19   family.  Once again, I am sincerely apologetic and remorseful

20   for my actions.  Thanks for giving me the opportunity to

21   express my regrets and my plans for the future.

22          THE COURT:  Very good.  Thank you.  Are you wanting

23   to make that part of the record or are you just going to argue

24   that, Mr. Brengle?  Either way is fine.  I'm just curious.

25          MR. BRENGLE:  Sure, yes.

1          THE COURT:  You want to file it?  Okay.  We can do

2     that.  All right.  Thank you, Mr. Ingram.

3          In calculating the -- and considering the guidelines,

4     I give weight and consideration to the need to avoid

5     unwarranted sentence departures.  In other words, I want to

6     treat everybody the same as long as they're similarly situated

7     and committed similar crimes and who've been convicted of

8     similar conduct.  That is an overarching concern.  Also part

9     of that are the other factors that I outlined, and first,

10    reflect the seriousness of the offense, I'm not sure I can

11    articulate it how serious this is.  The -- Society has

12    indicated that people who are felons are not allowed to have

13    guns.  It's not just because we're going to remove that right.

14    It's because there's a statistical point to be made, and that

15    is that those who are felons who have guns overwhelmingly

16    cause the vast amount of violence, gun violence, in the

17    country, particularly in this part of the country.  Lawful gun

18    owners don't create near the problem with guns as those who do

19    not lawfully possess guns.

20          Also, the -- I keep going back to the -- and I can

21    see this in my mind's eye of you being tased -- and I've seen

22    people tased in person, I know what it is -- and yet still

23    reach for the gun, and the image in my mind is that some law

24    enforcement officer somewhere, whoever arrested you, had the

25    presence of mind not to ventilate you, to shoot you dead.

1   That was a split-second decision, and I'm not sure everybody

2   would do that when you have a man who appears to be

3   desperately reaching for a weapon in that set of

4   circumstances, and it's by God's grace and that law

5   enforcement's patience that you're still here, I believe.

6   That is the way I see that particular crime.  It's one thing

7   to run with a gun.  It's another thing to possess drugs.  I

8   have some empathy, some cases sympathy for those who are

9   addicted to drugs.  I get that, and I'm taking that into

10  consideration as well.  It drives people to do things that

11  they might not otherwise do, and maybe you fall in that

12  category, I don't know, but I've personally seen it and I know

13  what it does.  But all of that's still avoidable, and for

14  whatever reason you have not avoided it.  I know you've been

15  treated for it and I know it's a very difficult addiction to

16  beat.

17          At the same time, my job is to ensure that you're

18  punished fairly and appropriately for this particular crime.

19  I need to deter others.  That's the reason I'm making my

20  speech here, is how offended that I am that you -- not that

21  you were carrying a weapon, but the way you ran with it and

22  then tried to gain possession of it after you had dropped it,

23  and again, part of my job is to do what I can from the bench

24  to protect the public from people who do things like you do

25  and, quite frankly, protect the public from you.  These are

1   the factors I take into account.  I think the

2   underrepresented -- the criminal history is a factor.  It's

3   not a central factor, but it is one, because it tells me that

4   you have had a long history back to your childhood.  I'm not

5   taking that into account.  I'm just making an observation.  I

6   haven't calculated this and I'm not sure I'm 100 percent right

7   on this.  I'm sure counsel could probably calculate this, but

8   it occurs to me that if you were to do something like this

9   again, you could be what's known as a career -- armed career

10  criminal, which is a minimum of mandatory 15 years.  You

11  missed that bullet, so to speak.  Poor choice of words, but

12  you missed that very narrowly, I understand.

13       I -- It impressed upon me that -- or it impressed me

14  that you apologized fervently to your family, and you should.

15  You've got them here with you.  They're obviously committed to

16  you and -- but you -- one person you didn't apologize to is

17  the law enforcement officer, who in effect saved your life and

18  may not have gone home that night had he not had that

19  patience.  So that is an impression on me as well.

20       You -- I think you indicated you had a GED, and I

21  think there was something in the PSR that you had an interest

22  in when you are released to take up a trade.  I think it was

23  plumbing and electricity; is that right?  Those are the

24  factors I take into account as well.  I take into account, as

25  Mr. Brengle brought up, is you're 48 or 49 years old and

1   you're getting that point in time where you still have your

2   hair and it's still the right color, it hasn't turned gray

3   yet.  It's coming, I promise you that, and you have a short

4   period of time to make amends.

5          So these are the factors, the -- in aggravation, I'd

6   say, you know, the five convictions for the distribution of

7   the controlled substances, involved the distribution of the

8   delivery of cocaine, and those convictions have been

9   disqualified, appropriately, but serious drug felonies for the

10  Armed Career Criminal Act purposes.  Had these -- As I

11  mentioned, had these cases been predicate offenses, you'd be

12  facing that mandatory minimum.  In addition, the recidivism, I

13  think is the word that Counsel used, that you are a walking,

14  talking billboard for recidivism.  You are one of those people

15  who is a frequent flier, some people say, you're constantly

16  before the court, constantly in prison.  These are -- It

17  reveals to me -- One other thing.  One thing it reveals, a

18  disrespect for the law for me, is the fact you do your time on

19  prior occasions, you're trusted out on parole, and within

20  three months in all -- on those two cases you were back in

21  prison.  In the third case you'd already committed another

22  crime, so they just gave up and I think released you from --

23  or discharged you at that point.  That tells me you just

24  simply don't have a great respect for the law.  That's a real

25  concern for me, and I think that in conjunction with how you

1   handled yourself that day with the law enforcement officer who

2   arrested you in reaching for the gun I think kind of goes

3   hand-in-hand, so I feel that there's some consistency in your

4   behavior that warrants a variation -- a variance.  Excuse me.

5         In mitigation, though, I see that you -- you know,

6   you had parents that struggled with alcohol and drug abuse.

7   Your dad was working, I think, at the steel factory, so he had

8   some income at least part of your time you were a child.

9   You've had a continuing drug addiction.  That's something that

10   can be addressed with -- through the BOP as well.

11         So based upon these aggravating factors, I don't

12   believe that even the high end of the guideline is

13   appropriate.  I think a variance is appropriate, so the

14   question is -- I think at the same time that 84 months is

15   excessive.  So having considered the type of sentences that

16   are available and all the factors that I've outlined and that

17   are set forth in the PSR, which I adopt, I find a sentence of

18   72 months is appropriate in this case, and that's what I will

19   impose; a fine of $200.  Restitution's zero.  We've handled

20   the forfeiture already.  I don't think we need to do any

21   further on that.  And then 36 months of supervised release.

22   There is a -- I'm going to be adopting the PSR's conditions of

23   supervised release.  I'm looking at a document that's dated

24   today.  The signature line for Derrick Ingram, and on the

25   second page, is that your signature, Mr. Ingram?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  So this waiver -- just so we're clear on

3     this, the waiver is indicating to me that you do not need to

4     have the conditions of supervision that are contained in the

5     PSR and that I'm adopting -- you do not need for me to go

6     through those individually.  You understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.  I -- For the record, I'll tell you

9     I think that it is appropriate, supervised release, the things

10    that are outlined by the PSR.  When you are released, and the

11    fact that you have had a great problem with the use of

12    controlled substances, cocaine, alcohol too, you'll be

13    monitored for use of these controlled substances.  There's

14    been some success with that.  You'll also be going to, I'm

15    sure, substance abuse, mental health treatment, kind of

16    combined, at the same time hopefully be able to reenter

17    society with your GED and whatever you can get from BOP by way

18    of guidance and training, help you get back in the market, job

19    market.  So these are the things I think are important by the

20    PSR's recommendations.  As to the supervised conditions, are

21    there any objections that want to be raised or any argument

22    going to be raised on the PSR as to the conditions?  I think I

23    may have covered this, but I want to be --

24          MS. BURNS:  No, Your Honor.

25          MR. BRENGLE:  No, not with regard to conditions, Your

1  Honor.

2          THE COURT:  I want to make sure you understand as

3  well that, Mr. Ingram, the conditions of release are -- by not

4  objecting to them, you're waiving any possible objections to

5  them in the future, not just today, but later on.  You

6  understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  I want you to understand as well that

9  after your release and after you're assigned a probation

10  officer, while you're on supervised release, that probation

11  officer may petition the Court to modify those conditions to

12  meet particular needs in your case, and the final decision as

13  to whether to modify any of those provisions rests with the

14  Court.  Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  So I'll adopt the conditions that are set

17  forth in the PSR.  So the sentence that I was proposing to

18  impose, is there any further argument on any of those items

19  that I've proposed as the sentencing?

20          MS. BURNS:  No, Your Honor.

21          MR. BRENGLE:  No, Your Honor.

22          THE COURT:  So the sentence that I outlined earlier,

23  I will impose or it will be imposed.  Is there anything,

24  Mr. Brengle, in your mitigation arguments that you wanted me

25  to speak more eloquently or more in depth about?

1          MR. BRENGLE:  No, Your Honor.

2          THE COURT:  Okay.  So the sentence will be imposed as

3   stated.  I want to talk about your appeal rights.  There's no

4   plea agreement in this case, so you can appeal your conviction

5   if you believe that your guilty plea was somehow unlawful or

6   voluntary or if there's some fundamental defect in the

7   proceedings that was not waived by your guilty plea.  In

8   addition, you would have a statutory right to appeal your

9   sentence, what we did today, under certain circumstances,

10  particularly if you think the sentence is contrary to law.

11  What I do want you to know is that with few exceptions, a

12  notice of appeal has to be filed within 14 days of the

13  judgment.  I can tell you that the judgment will be entered

14  today, but you have to file an appeal, if at all, within

15  14 days of today or when the judgment's entered.  If you're

16  unable to afford the services of a lawyer to handle your

17  appeal, we'll have a lawyer appointed to you.  Do you

18  understand these things I've discussed with you about the

19  appeal and so forth?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And you can speak to Mr. Brengle about

22  whether an appeal is appropriate in his view and in your view.

23  Certainly if you can't afford a copy of today's transcript or

24  the transcript from the change of plea hearing, one of those

25  will be provided to you at the government expense.  Is there

1    anything further from the --

2         PROBATION OFFICER:  Can you just cite the special

3    assessment and payment plan?

4         THE COURT:  Oh, sure.  What -- It's being requested

5    of me is to make sure that -- the requirement that there be

6    some sort of payment plan.  Having assessed your ability to

7    pay, payment of the total criminal monetary penalties should

8    be paid on a monthly equal installments of $50 or 10 percent

9    of your net monthly income, whichever is greater.  You shall

10   pay any financial penalty that is imposed by this judgment and

11   that remains unpaid at the commencement of the term of the

12   supervised release.  Additionally, since we're on this, upon

13   release from imprisonment, the defendant shall be placed on

14   supervised release for the term of 36 months, and within

15   72 hours of release from custody of the Bureau of Prisons, the

16   defendant shall report in person to the United States

17   Probation Office in the district to which he's assigned, all

18   right?  Anything further?  All right.  Very good.  Anything

19   from the Government?

20        MS. BURNS:  No, Your Honor.

21        THE COURT:  Mr. Brengle, anything further?

22        MR. BRENGLE:  Nothing from the defendant, Your Honor.

23   Thank you.

24        THE COURT:  Mr. Ingram, I wish you the best of luck,

25   and it's -- I am impressed that you have your family here, and

1   there was some tears in the courtroom today and I was

2   impressed by your statement, and I certainly hope that the

3   time you're with BOP serves to be a time that is worthwhile,

4   all right?  Good luck to you.  Thank you, everyone.

5                   (Court adjourned at 11:17 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          -oOo-

2                   REPORTER'S CERTIFICATE

3        I, Karen E. Waugh, CSR, RPR, CRR, Official Court

4   Reporter for the U.S. District Court, Southern District of

5   Illinois, do hereby certify that I reported with mechanical

6   stenography the proceedings contained in pages 1 - 41; that

7   the same is a full, true, correct and complete transcript

8   from the record of proceedings in the above-entitled matter.

9

10           DATED this 5th day of January, 2022.

11

12

13

14            _/s/Karen E. Waugh, CSR, RPR, CRR_

15

16

17

18

19

20

21

22

23

24

25